UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **ARNOLDO GUTIERREZ,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| *v.* ) | |
| ) | |
| **REUVEN KIGELMAN,** ) | |
| ) | |
| and, ) | |
| ) | **Civil Action No.: 3:13-cv-347** |
| **T.P.T. SYSTEMS, INC.,** ) | |
| ) | |
| and, ) | |
| ) | |
| **673753 ONTARIO LIMITED D/B/A** ) | |
| **TRAFFIX** ) | |
| ) | |
| *Defendants.* ) | |

### AMENDED COMPLAINT

Comes now the Plaintiff, Arnoldo Gutierrez, by counsel, and complains of the Defendants, Reuven Kigelman, T.P.T. Systems, Inc., and 673753 Ontario Limited d/b/a Traffix, as follows:

### Nature of Claims

1.   This Amended Complaint arises out of the Defendants' negligence in causing Plaintiff serious injuries and other damages.

2.   Defendant Reuven Kigelman ("Kigelman") was operating a tractor-trailer at highway speed when, as a result of Kigelman's negligence, the trailer lost a double wheel which then struck Plaintiff's vehicle. Defendant T.P.T. Systems, Inc. ("T.P.T.") owned the tractor that Kigelman negligently drove and, at the time of the accident, Kigelman was driving on behalf of T.P.T.  Defendant 673753 Ontario Limited d/b/a Traffix ("Traffix") owned and negligently

maintained the trailer from which the double wheel was thrown, and Traffix has leased the defective trailer to Kigelman. This accident took place on Interstate 81, two miles South of Mount Olive Road in Shenandoah, Virginia.

3. Plaintiff seeks damages exceeding $100,000.00.

## Jurisdiction and Venue

4. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between the Plaintiff, a citizen of the State of Texas, and the Defendants, all citizens or subjects of Canada; the parties to this matter all live outside the state of Virginia; and the parties, their agents or employees were operating motor vehicles in this Commonwealth.

5. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391(c)(3) since the Defendants are not residents in the United States.

## Parties

6. Plaintiff Gutierrez is a resident of Hidalgo County, Texas.

7. Defendant Kigelman is an individual residing in Canada who was a party to a collision or an accident while operating a motor vehicle in Virginia.

8. Defendant T.P.T. is a Canadian corporation doing business in the Commonwealth of Virginia.T.P.T.is a logistics company offering transportation services throughout the United States and Canada.

9. Defendant Traffix is a Canadian corporation doing business in the Commonwealth of Virginia.  Traffix is a trucking company that hires owners/operators of tractor trailers to drive loads and make deliveries.  In June of 2011, Kigelman was an owner/operator for Traffix.

**Factual Allegations**

10. On or about June 8, 2011, Plaintiff Gutierrez was driving a tractor trailer northbound on Interstate 81 in Virginia.

11. At the same time, Kigelman was driving a tractor trailer southbound on Interstate 81 in Virginia. Kigelman was on his way to return an empty trailer and pick up a load destined for Canada. T.P.T. owned the tractor Kigelman drove. Traffix owned the trailer Kigelman towed.

12. According to a Joint Report of Meeting and Joint Discovery/Case Management Plan, signed by counsel for T.P.T., Kigelman was operating a vehicle making a delivery for T.P.T. on June 8, 2011.

13. While driving down Interstate 81 on June 8, 2011, Kigelman had set his cruise control and was not aware of his actual speed.

14. Kigelman was responsible for performing regular inspection of the tractor and trailer.

15. As a motor carrier operator, Kigelman was required to systematically inspect, repair and maintain his motor vehicle and parts and accessories, including axles, wheels and rims, and insure that they were in safe and proper operating condition at all times.

16. In response to Plaintiff's Requests for Admission to Traffix, propounded in prior litigation, Traffix admitted that the trailer was maintained by Traffix and Kigelman.

17. In a post-accident statement, Kigelman asserts that he performed multiple inspections during his trip from Milton, Ontario, to Winchester, Virginia, and also performed a full vehicle pre-trip inspection the morning he left Winchester, Virginia.

18. Traffix's Accident Investigative Interview states that, during the post-accident interview of Kigelman, Kigelman demonstrated "above average mechanical knowledge especially in the area of the wheels and hub design."

19. During these inspections, Kigelman did not note signs that would indicate that a wheel assembly could separate from the trailer and spin off its axle.

20. During these inspections, Kigelman did not note that grease was improperly located on the inside of the wheel.

21. During these inspections, Kigelman did not note that the hub cap window was discolored or burnt.

22. During these inspections, Kigelman did not note abnormal tire wear.

23. During these inspections, Kigelman did not note that the hub cap or hub was too hot to touch.

24. At or around mile marker 289, in Shenandoah County, a two-wheel assembly on the passenger side of Kigelman's trailer separated from the trailer and spun off the axle.

25. The wheel assembly veered across the highway median into opposing traffic lanes, striking Plaintiff's vehicle.

26. Prior to the wheel assembly's separation, Kigelman did not notice anything while driving that would indicate that the wheel assembly would separate from the trailer and spin off its axle.

27. Kigelman did not note any wheel noise or vibration prior to the wheel assembly's separation.

28. Kigelman did not note any wobbling of the wheel assembly prior to its separation.

29. Kigelman did not note any smoking of the wheel assembly prior to its separation.

30. Kigelman did not note any wheel lock-up prior to the wheel assembly's separation.

31. After the wheel assembly separated from the trailer and spun off its axle, Kigelman did not immediately notice that he had lost an entire wheel assembly.

32. Kigelman also did not immediately notice when another tractor trailer driver used hand signals to alert him that he had lost a wheel assembly.

33. After the other tractor trailer driver continued to insist that Kigelman pull his tractor trailer to the side of the road, Kigelman slowed down his truck and ultimately pulled over, at or around mile marker 285. When Kigelman pulled his truck to the side of the interstate, he finally realized that the tractor trailer he was driving had lost a full wheel assembly.

34. Traffix's Accident Investigative Interview concluded that the wheel assembly's separation from the trailer and spinning off its axle was caused by a wheel bearing failure.

35. Upon information and belief, wheel bearing failure results from improper maintenance and lack of lubrication of the tractor-trailer wheel axle.

36. Upon information and belief, regular maintenance and proper inspection of the wheel axle at issue, along with attentive driving, would have indicated to Kigelman and Traffix that wheel bearing failure was imminent.

37. Additionally, T.P.T. and Traffix knew or should have known that Kigelman had a record of driving convictions, a prior preventable accident, a violation of company policy, and prior terminations—including a termination from T.P.T.—that indicated Kigelman required additional care or supervision in the operation of the vehicle.

38. Additionally, Traffix, who was entrusted with the maintenance of the vehicle driven by Kigelman, knew or should have known that the vehicle driven by Kigelman was insufficiently maintained and therefore unsafe.

39. Plaintiff sustained serious injuries as a result of this accident.

40. The sole proximate cause of the accident was the Defendants' negligence.

41. Plaintiff did not in any way contribute to this accident.

42. By failing to properly maintain and inspect the wheel axle at issue, and/or failing to drive attentively, Kigelman and Traffix engaged in conduct that was likely to result in injury to another, and then either acted consciously in disregard of another person's rights or acted with reckless indifference to their own risky behavior.

## Count One
## Negligence Of Defendant Reuven Kigelman

43. The foregoing allegations are incorporated as if re-alleged herein.

44. At the time of the accident made the basis of this suit, Kigelman was operating the aforementioned vehicle in a negligent and careless manner in the following respects which, among others, may be shown at the trial of this cause:

    a. In failing to keep a proper lookout;

    b. In failing to timely make application of his brakes;

    c. In failing to operate the vehicle in a reasonable and prudent manner;

    d. In failing to operate the vehicle in obedience to traffic laws and regulations;

    e. In violation of the Virginia Code § 46.2-852 *et seq.*;

    f. In driving inattentively;

  g. In failing to exercise ordinary care when securing the truck wheel in question;

  h. In failing to properly inspect the wheel to insure it had been properly secured prior to embarking upon a public highway;

  i. In failing to utilize appropriate devices to insure the wheel was properly secured.

45. Each of these acts or omissions, singularly or in combination with others, constitutes negligence which was the proximate cause of this incident and the injuries sustained by Plaintiff.

## Count Two
## Negligence Of T.P.T. Systems, Inc.

46. The foregoing allegations are incorporated as if re-alleged herein.

47. T.P.T. owned the tractor operated by Kigelman on or about June 8, 2011, in the Commonwealth of Virginia.

48. T.P.T. was in the process of selling its truck to Kigelman during the month of June of 2011.

49. T.P.T. expressly or impliedly permitted Kigelman to drive the tractor it owned.

50. Kigelman was an employee, agent and/or servant of T.P.T. As such, T.P.T. is responsible and liable for the negligent conduct of Kigelman, among other negligent acts and omissions which may be shown at trial.

51. Kigelman was acting within the course and scope of his employment and/or agency and on behalf of T.P.T. when he was driving southbound on Interstate 81 in Virginia on or about June 8, 2011.

52. Additionally, and without waiving any of the foregoing, T.P.T. negligently entrusted the vehicle and duties and responsibilities to Kigelman because it knew and/or had reason to know that Kigelman was not a safe and prudent driver. Kigelman was negligent as a result of his unfitness, and Kigelman's negligence was a proximate cause of Plaintiff's injuries.

53. Each of these acts and omissions, singularly or in combination with others, constitute negligence which was the proximate cause of this incident and the injuries sustained by Plaintiff.

### Count Three
### Negligence Of 673753 Ontario Limited d/b/a Traffix

54. The foregoing allegations are incorporated as if re-alleged herein.

55. Traffix owned and/or operated the trailer hauled by Kigelman on or about June 8, 2011, in the Commonwealth of Virginia. Traffix hired Kigelman to haul its trailer.

56. Kigelman was an employee, agent and/or servant of Traffix. As such, Traffix is responsible and liable for the negligent conduct of Kigelman, among other negligent acts and omissions which may be shown at trial.

57. Kigelman was acting within the course and scope of his employment and/or agency and on behalf of Traffix when he was driving southbound on Interstate 81 in Virginia on or about June 8, 2011.

58. Additionally, and without waiving any of the foregoing, Traffix negligently entrusted the trailer to Kigelman because it knew and/or had reason to know that Kigelman was not a safe and prudent driver. Kigelman was negligent as a result of his unfitness, and Kigelman's negligence was a proximate cause of Plaintiff's injuries.

59. Additionally, and without waiving any of the foregoing, Traffix negligently

entrusted the vehicle to Kigelman because it knew and/or should have known that the vehicle was unsafe. The negligence was a proximate cause of Plaintiff's damages.

60. Each of these acts and omissions, singularly or in combination with others, constitute negligence which was the proximate cause of this incident and the injuries sustained by Plaintiff.

WHEREFORE, Plaintiff Gutierrez demands that judgment be entered in his favor and against the Defendants on the above-stated counts and to include compensation for the following:

1. The physical pain and disability sustained by Plaintiff from date of injury to the time of trial;

2. Future physical pain and disability reasonably anticipated to be sustained by Plaintiff in the future;

3. Mental anguish and suffering sustained by Plaintiff from date of injury to time of trial;

4. Mental anguish and suffering which is reasonably anticipated to be suffered by Plaintiff in the future;

5. Loss of earnings sustained by Plaintiff from date of injury to time of trial;

6. Loss of earnings and earning capacity reasonably anticipated to be suffered by Plaintiff in the future;

7. Reasonable and necessary medical expenses incurred by Plaintiff in the treatment of Plaintiff's injuries from date of injury to time of trial;

8. Reasonable and necessary medical expenses reasonably anticipated to be sustained by Plaintiff in the future for treatment of Plaintiff's injuries;

      9.      Past and future physical disfigurement; and

      10.     Past and future physical impairment.

As such, Plaintiff Arnoldo Gutierrez affirmatively pleads that he seeks monetary relief aggregating more than $100,000.00, exclusive of costs and interest.

In the alternative, Plaintiff would show that if any injury and/or condition from which he currently suffers was pre-existing, then such condition was aggravated and/or exacerbated by the negligence of the Defendants herein.

In the alternative, Plaintiff would show that if he suffers from any subsequent injury and/or condition then such injury and/or condition was aggravated and/or exacerbated by the negligence of the Defendants herein.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages, costs of Court, pre-judgment and post-judgment interest at the legal rate, and for any and all further relief, both general and special, legal and equitable to which Plaintiff may be justly entitled.

                **TRIAL BY JURY IS REQUESTED.**

                ARNOLDO GUTIERREZ

                By Counsel

                /s/ Tim Schulte

                Tim Schulte (VSB #41881)
                Blackwell N. Shelley, Jr. (VSB #28142)
                Lauren Fisher (VSB #80360)
                Shelley & Schulte, P.C.
                2020 Monument Avenue
                Richmond VA 23220
                (804) 644-9700

        (804) 278-9634 [facsimile]
tim.schulte@shelleyschulte.com
blackwell.shelley@shelleyschulte.com
lauren.fisher@shelleyschulte.com

Deborah Bradley (*Pro hac vice* application pending)
Stern Law Group
4909 Bossonnet St., Suite 100
Bellaire, Texas 77401
(713) 661-9900
(713) 666-5922 [facsimile]
dbradley@stern-lawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2014, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ Tim Schulte
Tim Schulte (VSB# 41881)
Shelley & Schulte, P.C.
2020 Monument Avenue
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [fax]
Tim.Schulte@shelleyschulte.com